**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DANIEL KIM, et al.,** | **1:16-cv-01656-LJO-SKO** |
| **Plaintiffs,** | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS (ECF. 34)** |
| **v.** | |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

## I. <u>INTRODUCTION</u>

This matter involves Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction. Doc. 34. Plaintiffs filed an initial complaint in this case on November 2, 2016. On June 16, 2017, the Court granted Defendant's March 27, 2017, motion to dismiss Plaintiffs' initial complaint. Doc. 28. Plaintiffs filed a first amended complaint ("FAC") on July 14, 2017. Doc. 29. On August 27, 2017, Defendant filed a motion to dismiss the FAC. Doc. 34. On September 11, 2017, Plaintiffs filed an opposition. Doc. 35. On September 15, 2017, Defendant filed a reply. Doc. 36. For the following reasons, Defendant's motion is granted, and Plaintiffs' complaint is DISMISSED.

## II. <u>FACTUAL BACKGROUND</u>

The following facts are drawn from the FAC and filings in this matter, and are accepted as true only for the purpose of this motion to dismiss. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). On August 14, 2015, Dragon Kim and Justin Lee, both minors, were camping with Dragon's parents, Plaintiffs Daniel and Grace Kim, and Dragon's sister, Plaintiff Hannah Kim, at the Yosemite Valley

1

Upper Pines Campground, Site 29, in Yosemite Valley National Park. Doc. 29 at ¶¶ 3-5, 18-20. At approximately 4:59 a.m., the tent in which Dragon and Justin were sleeping was struck by a limb falling from a California black oak ("the Subject Tree"). *Id*. at ¶ 20. Both boys died of crushing injuries sustained in the incident. *Id*. at ¶¶ 21-22.

Defendant was aware of the existence of defects in the Subject Tree. *Id*. at ¶ 24. There were no reports of high winds or precipitation at the time of the incident, and no warning signs or barriers placed near the Subject Tree. *Id*. at ¶¶ 23, 26. Plaintiffs bring three claims pursuant to the Federal Tort Claims Act ("FTCA"), which allows the government to be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Plaintiffs' first claim is for wrongful death, the second is for negligent infliction of emotional distress, and the third for fraudulent concealment. *Id*. at ¶¶ 1, 24-25.

### III. <u>STANDARD OF DECISION</u>

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the Court. Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A "court of the United States may not grant relief absent a constitutional or valid statutory grant of jurisdiction." *United States v. Bravo-Diaz*, 312 F.3d 995, 997 (9th Cir. 2002). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). "When subject matter jurisdiction is challenged under [Rule] 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). No presumption of truthfulness applies to a plaintiff's allegations when evaluating jurisdictional claims. *Thornhill Pub. Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

A Rule 12(b)(1) motion may make facial or factual attacks on the existence of jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1034, 1039 (9th Cir. 2004). A facial attack contests whether the

2

allegations in the complaint are sufficient to invoke federal jurisdiction, while a factual challenge "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*; *see also Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

When addressing the existence of subject matter jurisdiction, a court "is not restricted to the face of the pleadings." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). A court may rely on extrinsic evidence and resolve factual disputes relating to jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In doing so, a court may "rely on affidavits or any other evidence properly before the court." *Id*. When considering items outside the pleading, the court resolves "all disputes of fact in favor of the non-movant." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).

## IV. ANALYSIS

### A.      The Federal Tort Claims Act and the Discretionary Function Exception

"It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Without a waiver of sovereign immunity, a federal court lacks jurisdiction where the United States is sued. *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011).

The FTCA waives the United States' sovereign immunity for tort claims caused by negligence on the part of government employees acting within the scope of their employment. *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008). The FTCA, however, includes a number of exceptions to this otherwise broad waiver of sovereign immunity. *Id*. at 1129.

Among the limitations on the FTCA's immunity waiver is the discretionary function exception, which bars claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved by abused." 28 U.S.C. § 2680(a). The discretionary function

3

exception reinstates sovereign immunity in situations where "employees are carrying out governmental or 'regulatory' duties." *Faber v. United States*, 56 F.3d 1122, 1124 (9th Cir. 1995). The exception is limited to discretionary acts, that is, acts "involv[ing] an element of judgment or choice." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "The purpose of the discretionary function exception is to protect the ability of the government to proceed with decisionmaking in carrying out its unique and vital functions without 'second-guessing' by the courts as to the appropriateness of its policy choices." H.R. Rep. No. 1015, 101st Cong. 2nd Sess. 134 (1991).

The two-part *Berkovitz* test is used to determine if a claim is subject to the discretionary function exception. *Terbush*, 516 F.3d at 1129. In the first step, the court determines whether the government's "actions involve an 'element of judgment or choice.'" *Terbush*, 516 F.3d at 1129 (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). "This inquiry looks at the 'nature of the conduct, rather than the status of the actor' and the discretionary element is not met where 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Terbush*, 516 F.3d at 1129 (quoting *Berkovitz*, 486 U.S. at 536). There can be no discretion if a statute or policy mandates a course of action and an employee "has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536; *Navarette v. United States*, 500 F.3d 914, 916 (9th Cir. 2010) ("An agency lacks discretion where a statute or policy directs mandatory and specific action, and an employee has no lawful action other than to comply with the directive.").

If the conduct satisfies the first step and involves an element of choice or judgment, a court must next consider "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. "[O]nly governmental actions and decisions based on considerations of public policy" are protected. *Id.* at 537. "The decision need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it

must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

When it invokes the discretionary function exception, the government "bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity" because such an exception "is analogous to an affirmative defense" to correctly place the burden on the party which benefits from the defense." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992). "Although the plaintiff bears the initial burden of proving subject matter jurisdiction under the FTCA, 'the United States bears the ultimate burden of proving the applicability of the discretionary function exception.'" *Faber*, 56 F.3d at 1124 (quoting *Prescott*, 973 F.2d at 701-02).

If the government successfully shows that that challenged act or omission satisfies both steps of the *Berkovitz* test, then the discretionary function exception applies, and the federal courts lack subject matter jurisdiction. *Bailey v. United States*, 623 F.3d 855, 860 (9th Cir. 2010). Even if the "action or omission constituted an abuse of discretion or was a wrong choice under the circumstances," the government is immune from suit under the FTCA. *Id*.

**B.** **Application of the Discretionary Function Exception to Plaintiffs' First and Second Causes of Action**

The Court has already considered and rejected Plaintiffs arguments regarding the discretionary function exception. The Court hereby incorporates its prior order by reference, and will limit its consideration to such new arguments as Plaintiffs have advanced.

As in the previous motion to dismiss, Defendant argues that the discretionary function exception deprives the Court of jurisdiction over Plaintiffs' claims. Defendant asserts that the additional factual allegations offered by Plaintiffs, which center on an alleged mandatory duty imposed by the National Park Service's Organic Act, should not change the Court's previous ruling. Doc. 34-1 at 18. Defendant argues that the Organic Act, which establishes as the fundamental purpose of the National Park System the mission to conserve and leave unimpaired for future generations "the scenery, natural and historic

objects, and wild life" of the park system, does not impose a mandatory duty to protect. *Id.*

Plaintiffs argue that Defendant has not met its burden to show that the discretionary function exception applies to the conduct here. Doc. 35 at 9. Apart from reiterating arguments the Court previously considered and rejected, *id.* at 9-11, Plaintiffs argue that "maintenance [of the Subject Tree] is not the kind of regulatory activity that involves policy consideration and is protected by the discretionary function exception" and that determination of a hazard rating is necessarily based on objective scientific standards. *Id.* at 13.

Plaintiffs have not identified any Park Service policy which mandates that specific action be taken in rating and abating trees. Plaintiffs cite Yosemite Park Directive No. 25, which they contend requires specific ratings and abatement of hazard trees. Doc. 35 at 9-10. The Court considered Yosemite Park Directive No. 25 in its previous order, and concluded that the Directive vests discretion in the park superintendent to administer the hazard tree management program. Doc. 28 at 9. Plaintiffs arguments, which reference portions of the Directive but do not address the park superintendent's discretion in implementing the Directive, do not refute the Court's previous conclusion.

Plaintiffs also contend that Defendant has not met its burden at step two of the discretionary function analysis, arguing that tree rating and abatement is not susceptible to a policy analysis. Doc. 35 at 13-16. First, Plaintiffs argue that the maintenance of trees in Yosemite National Park is a routine task and involves no element of discretion. *Id.* at 13. In support of their argument, Plaintiffs cite *Terbush v. United States*, 516 F.3d 1125, and *Fernandez v. United States*, 496 F. App'x 704 (9th Cir. 2012), but neither case supports Plaintiffs' position.

In *Terbush*, the Ninth Circuit concluded that some maintenance could be routine and involve no exercise of discretion, while other maintenance functions could "involve considerable discretion that invokes policy judgment." 516 F.3d at 1133-34. In that case, the court concluded that the record was not sufficiently clear to determine whether the maintenance in question involved policy judgments. *Id.* at 1134. Here, the record does indicate that the management of trees in Yosemite National Park involves

policy judgments, as explained in the Court's prior order. Doc. 28 at 13-15.

The court in *Fernandez* determined that a mandatory policy required the identification of whether trees were healthy or constituted either an "imminent" or "potential" danger, and the disposal of trees designated as posing a danger. 496 F. App'x at 705. Accordingly, the removal of danger trees under that mandatory policy constituted only routine maintenance not susceptible to a policy analysis, since it involved no weighing of competing interests and only technical or professional judgements about safe removal. *Id*. at 706. In this matter, no mandatory policy has been identified, so *Fernandez* does not apply.

Plaintiffs also argue that the analysis applied by the court in *Botell v. United States*, No. 2:11-cv-01545-TLN-GGH, 2013 WL 3941004 (E.D. Cal. Jul 30, 2013), should be applied here. Doc. 35 at 17-19. The court in *Botell* concluded that the discretionary function exception did not apply to the failure of a retaining wall on a park trail. *Botell*, 2013 WL 3941004 at *8. Unlike the situation here, however, in *Botell* it was undisputed that National Park Service regulations imposed a mandatory duty on park officials to take care that facilities, including trails, were free of recognized hazards. *Id*. at *2-3, *8. As the *Botell* court put it, the "argument that the[] failure to abate the known danger was discretionary is unavailing because the park's safety program *mandated* the closure of known dangers." *Id*. at *8 (emphasis added). Here, no statutes or regulation required the Park Service to take any specific action regarding the Subject Tree. Thus, the mandatory duty which was present in *Botell* and the existence of which denied the Park Service the protection of the discretionary function exception is not a factor in this case.

Finally, Plaintiffs argue that Defendant has not identified any valid policy judgments relevant to the tree management decisions at issue here. Defendant identified a number of policy considerations based on the declaration of Brian Mattos, the chief forester of Yosemite National Park. Doc. 34-1 at 9-10 ("Treatment of hazard trees can have effects on threatened, endangered, and sensitive species and their habitats; environmental resources; cultural resources; visual resources and landscape values; soils

and hydrology; alteration of the local natural forest structure and composition; wildlife nesting and breeding periods; and disturbance of archaeological sites."). Plaintiffs have not demonstrated that these policy judgments are spurious or illusory. Moreover Plaintiffs arguments as to the merits of each policy factor asks the Court to engage in precisely the type of judicial second guessing which the discretionary function exception is intended to avoid. *See Berkovitz*, 486 U.S. at 536-37. Accordingly, the Court finds that both prongs of the *Berkovitz* test have been met, the discretionary function exception applies, and sovereign immunity blocks Plaintiff's first and second claims.

## C.  **Fraudulent Concealment Claim**

The third cause of action alleges that Defendant intentionally concealed the condition of the Subject Tree and the possibility that it would fail. Doc. 29 at ¶¶ 62-77. Plaintiffs allege that Defendant's concealment of the risk induced Plaintiffs to camp near the Subject Tree, that Plaintiffs had no means of discovering the condition of the Subject Tree, and that, if Plaintiffs had been aware of the condition of the Subject Tree, they would not have camped near it. *Id*. at ¶¶ 68, 74-75. Finally, Plaintiffs allege that the concealment was a substantial factor in Plaintiffs' harm. *Id*. at ¶ 77.

In its motion to dismiss, Defendant argues that Plaintiffs' claim is barred by the discretionary function and misrepresentation exceptions to the FTCA. Doc. 34-1 at 21. Since Plaintiffs' claim for fraudulent concealment sounds in misrepresentation or deceit, Defendant contends, the claim is not within the Court's jurisdiction. *Id*. In response, Plaintiffs argue that the misrepresentation exception does not apply because the claim asserted here is based on a failure to warn of a known risk rather than on misrepresentation. Doc. 35 at 17.

### 1.  **Application of the Discretionary Function Exception**

The conduct alleged in Plaintiffs' fraudulent concealment claim is distinct, though related to, that alleged in Plaintiffs' other two claims. While Plaintiffs' wrongful death and negligent infliction of emotional distress claims allege that Defendant negligently maintained the Subject Tree and nearby premises in an unsafe condition, *see* Doc. 29 at ¶¶ 36-39, 56, Plaintiffs' fraudulent claim contends that

Defendant intentionally concealed the unsafe condition of the Subject Tree. *Id.* at ¶¶ 67, 72-75.

A failure to warn may fall within the discretionary function exception so long as the decision is "a policy decision or part of a policy decision." *Zumwalt v. United States*, 928 F.3d 951, 955 (10th Cir. 1991). For example, a decision not to place warning signs in an area designated for preservation as a "wilderness area" may be a discretionary function, *see id.*, while a decision not to post warning signs near pools due to a perceived lack of need for signage is not protected by the discretionary function exception. *Smith v. United States*, 546 F.2d 872, 877 (10th Cir. 1976).

The Ninth Circuit has applied a similar analysis to determining whether a failure to warn may fall within the discretionary function exception. *See United States v. White*, 211 F.2d 79, 82 (9th Cir. 1954) (even assuming that a decision not to remedy a hidden danger was a discretionary function, failure to warn a business invitee "could not rationally be deemed the exercise of a discretionary function"); *Lindgren v. United States*, 665 F.2d 978, 982 (9th Cir. 1982) ("While it is indeed possible that a particular failure to warn might be discretionary, each failure must be analyzed separately."). Defendant has not advanced any argument that the failure to warn, set apart from the decision not to abate the Subject Tree, involved an exercise of discretion. It is Defendant's burden to show that the discretionary function exception applies, and Defendant has not met that burden as to Plaintiffs' fraudulent concealment claim.

## 2. <u>Misrepresentation Exception</u>

The analysis does not end here, however, as the Court must also determine whether Plaintiffs' fraudulent concealment claim is barred by the misrepresentation exception. Under 28 U.S.C. § 2680(h), the jurisdiction granted by the FTCA does not apply to "[a]ny claim arising out of . . . misrepresentation [or] deceit." The Ninth Circuit has concluded that "claims against the United States for fraud or misrepresentation by a federal officer are absolutely barred by 28 U.S.C. § 2680(h)." *Owyhee Grazing Ass'n, Inc. v. Field*, 637 F.2d 694, 697 (9th Cir. 1981). Claims of both negligent misrepresentation and fraudulent misrepresentation are included within the retention of sovereign immunity provided by §

2680(h). *See United States v. Neustadt*, 366 U.S. 696, 702 (1961). However, § 2680(h) does not bar "negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Block v. Neal*, 460 U.S. 289, 297 (1983).

The phrase "arising out of" as used in § 2680(h) is interpreted to encompass all injuries that are dependent on one of the named torts. *United States v. Shearer*, 473 U.S. 52, 55 (1985). To determine whether a claim is barred by § 2680(h), a court must therefore "look[] beyond the labels used." *Thomas-Lazear v. FBI*, 851 F.2d 1202, 1207 (9th Cir. 1988). The court must "examine whether the conduct on which the claim is based constitutes one of the torts listed in § 2680(h)." *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996).

"[T]he Supreme Court has interpreted [§ 2680(h)] to mean that in enacting the exclusion provision Congress had in mind the 'traditional and commonly understood' torts of negligent misrepresentation and common law deceit." *Ramirez v. United States*, 567 F.2d 854, 856 (9th Cir. 1977) (quoting *Neustadt*, 366 U.S. at 706-07). The tort of negligent misrepresentation is a breach of the "duty to use due care in obtaining and communicating information upon which [another party] may reasonably be expected to rely in the conduct of his economic affairs." *Neustadt*, 366 U.S. at 706.

"Courts have had difficulty determining whether a claim is one for misrepresentation" because "'any misrepresentation involves some underlying negligence' and 'any negligence action can be characterized as one of misrepresentation'" *United States v. Fowler*, 913 F.2d 1382, 1387 (9th Cir. 1990) (quoting *Guild v. United States*, 685 F.2d 324, 325 (9th Cir. 1982)). The distinction drawn in the Ninth Circuit is "between the performance of operational tasks and the communication of information." *Guild*, 685 F.2d at 325. While "injuries resulting from commercial decisions made in reliance on government representations" fall within the exception, "[t]he Government is liable for injuries resulting from negligence in performance of operational tasks even though misrepresentations are collaterally involved." *Id*. "Operational tasks" include actions such as rendering medical treatment, *Mundy v. United*

*States*, 983 F.2d 950, 952 (9th Cir. 1993), processing a request for a security clearance, *Ramirez*, 567 F.2d at 856, or inspecting and supervising the construction of a house. *Neal v. Bergland*, 646 F.2d 1178, 1184 (6th Cir. 1981). Here, while Plaintiffs allege that Defendant was negligent in maintaining the Subject Tree and its environment, Plaintiffs also allege that Defendant intentionally concealed the danger posed by the tree by representing that the Upper Pines Campground was safe for camping, and that Plaintiffs relied on that representation. Plaintiffs fraudulent concealment claim is based on the "communication of information" rather than on "the performance of operational tasks," and hence is one for misrepresentation.

Circuit courts have also held that "a claim must contain the essential elements of misrepresentation to come within the exception." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 854 (10th Cir. 2005) (collecting cases). What elements are "essential" has caused some confusion. One relatively non-controversial element is that the plaintiffs have relied on the representation to their detriment. *See Block*, 460 U.S. at 296 ("[T]he essence of an action for misrepresentation is the communication of misinformation on which the recipient relies."); *Jimenez-Nieves v. United States*, 682 F.2d 1, 4 (1st Cir. 1982) ("[O]ne essential element of misrepresentation remains reliance by the plaintiff himself upon the false information that has been provided."); *Saraw Partnership v. United States*, 67 F.3d 567, 571 (5th Cir. 1995) ("Where there is no detrimental reliance on an alleged miscommunication, no claim for misrepresentation is made"); *Guild*, 685 F.2d at 326 (the misrepresentation exception applies where the essence of a claim is reliance upon misinformation communicated by the government). Plaintiffs have alleged that they relied upon the government's representation that the Upper Pines Campground Site 29 was a safe place to camp. Doc. 29 at ¶ 75.

The Ninth Circuit suggested at one time that a plaintiff's injuries must be commercial in nature to fall within the misrepresentation exception. *See Green v. United States*, 629 F.2d 581, 584-85 (9th Cir. 1980) ("[T]he application of the exception depends upon the commercial setting within which the economic loss arose."); *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990) (applying

*Green* to hold that the exception applies "when the plaintiff suffers an economic loss as a result of a commercial decision based on a misrepresentation consisting of either false information of a failure to provide information [a government actor] has a duty to provide"). Some courts have applied this rule and rejected the application of the misrepresentation exception to personal injuries. *Murrey v. United States*, 73 F.3d 1448, 1451 (7th Cir. 1996); *Kohn v. United States*, 680 F.2d 922, 926 (2d Cir. 1982); *Hinshaw v. United States*, __F. Supp. 3d __, 2017 WL 3704695, at *6 (D. Ariz. Aug. 28, 2017).

*Green* represents the Ninth Circuit's most direct assertion of a commercial injury requirement in the context of the misrepresentation exception. *Green* confronted claims of negligence, trespass, and noncompliance with an EPA order, stemming from the government's use of the pesticide DDT on lands grazed by plaintiffs' cattle. 629 F.2d at 583. The district court found that the discretionary function exception barred claims stemming from the government's decision to use DDT, and that the misrepresentation exception also applied due to material misstatements and omissions in a letter sent by the government to the plaintiffs. *Id*. The Ninth Circuit affirmed the district court, rejecting appellants' arguments that "the government's liability rests on its failure to discharge its duty to warn" and that "the misrepresentation exception is applicable only when the government has no duty to provide information to the persons injured by the misrepresentation." *Id*. at 583-84.

The Ninth Circuit went on to state in *Green* that "the applicability of the exemption depends upon the commercial setting within which the economic loss arose," and held "that the misrepresentation exception precludes liability where the plaintiff suffers economic loss as a result of a commercial decision which was based on a misrepresentation by government consisting either of false statements or a failure to provide information which it had a duty of provide." *Id*. at 584-85. In support of the holding, the court observed that "[w]here the plaintiffs' injuries were not commercial . . . courts have generally ruled that the exception does not preclude claims based on the government's failure to inform." *Id*. at 585; *see also Mt. Homes*, 912 F.2d 356 ("The tort of negligent misrepresentation has been confined largely to the invasion of financial or commercial interest in the course of business dealings.").

More recently, however, the Ninth Circuit, without discussion of *Green*, affirmed the application of the misrepresentation exception to an action for personal injuries. *Lawrence v. United States*, 340 F.3d 952, 958 (9th Cir. 2003). In *Lawrence*, the Ninth Circuit upheld a district court's application of the misrepresentation exception in a case involving wholly non-commercial injuries without addressing *Green*. *See Lawrence*, 340 F.3d at 952, 958. The underlying *Bivens* claim in *Lawrence* involved misrepresentation in the form of federal officers failing to provide full, complete, and accurate information about the criminal record of a relocated witness, which allowed the witness to be employed at a residential care facility for juveniles and licensed as a foster parent. *Id*. at 954. The witness then sexually abused the plaintiff, a minor. *Id*. The district court held that the claim was barred both by the discretionary function and misrepresentation exception, and the Ninth Circuit affirmed both holdings. *Id*. at 958. The sole explanation given by the Ninth Circuit for its decision in *Lawrence* was that the "claim was based on [the federal officer's] alleged failure to communicate certain information at the exemption hearing." *Id*.; *see also Doe v. Holy See*, 557 F.3d 1066, 1085 n.10 (9th Cir. 2009) (citing Lawrence with approval for the proposition that "government officials' failure to warn about an individual's dangerousness, which ultimately led to sexual abuse of a minor, comes within the misrepresentation exclusion").

Some district courts within the Ninth Circuit have followed *Lawrence* in applying the misrepresentation exception to personal injury claims. *See Terry v. Newell*, No. CV-12-02659-PHX-DGC, 2014 WL 5100233, at * 3 (D. Ariz. Oct. 3, 2014) (applying misrepresentation exception to claims including emotional injuries). Other courts outside the Ninth Circuit have also applied the misrepresentation exception to personal injury claims. *See Schneider v. United States*, 936 F.2d 956 (7th Cir. 1991); *Metz v. United States*, 788 F.2d 1528, 1534-35 (11th Cir. 1986); *Mullens v. United States*, 785 F. Supp. 216 (D. Me. 1992); *Lloyd v. Cessna Aircraft Co.*, 429 F. Supp. 181 (E.D. Tenn. 1977); *Vaughn v. United States*, 259 F. Supp. 286 (N.D. Miss. 1966).

Some authorities assert that *Guild v. United States*, 685 F.2d 324, or *Ramirez v. United States*,

567 F.2d 854, stand for limiting the misrepresentation exception to commercial injuries. *See Green*, 629

F2d. at 584; *Hinshaw*, 2017 WL 3704695 at *6 n. 69. A close reading of these two cases reveals at best

ambiguous support for this proposition. In *Guild*, the Ninth Circuit stated that the exception "applies to

claims for damages resulting from commercial decisions" but did not discuss whether the exception

could *also* apply to claims for personal injuries. *Guild*, 685 F.2d at 325. The court's holding that the

exception did not apply was based on the plaintiff's pleading a claim based on an operational task. *Id*. at

326. Likewise, *Ramirez* was based on the fact that medical malpractice constitutes an operational task,

as well as the decision of Congress not to distinguish between failure to give informed consent and other

forms of negligence in providing medical care. 567 F.2d at 856-57. *Ramirez* overruled prior cases that

had held that an incorrectly communicated diagnosis was a misrepresentation, but did not consider

whether the misrepresentation exception contemplated a distinction between commercial and personal

injuries. *Id*. at 857.

  The apparent contradiction between the application of the misrepresentation exception in *Green*

and in *Lawrence* cannot be reconciled with ease. Nonetheless this Court believes it is prudent to follow

*Lawrence*, both because it is the Ninth Circuit's most recent pronouncement on the issue and because it

appears to present the better-reasoned rule for several reasons. First, *Green's* statements suggesting the

misrepresentation exception should be limited to the commercial context is arguably dicta, as no other

context was at issue in that case. Also, *Green* relied on several cases in which the commercial v.

noncommercial decision was not pivotal. *E.g., Ramirez*, 567 F.2d at 857 (claim was really one for

medical malpractice, a tort which Congress considered but rejected including in the list of FTCA

exceptions); *Guild*, 685 F2d at 326 (claim was really one concerning "engineering malpractice" and

therefore court declined to apply the misrepresentation exception because an operational task was at

issue). This Court finds the reasoning of *Carter v. United States*, 725 F. Supp. 2d 346, 357 (E.D.N.Y.

2010), *aff'd in part, rev'd in part on other grounds*, 494 F. App'x 148 (2d Cir. 2012), helpful. There, the

district court reviewed existing precedent and concluded that the authorities are equivocal on the

question of whether the misrepresentation question was limited to commercial contexts, but finding a clear thread in the caselaw requiring reliance[1] on the alleged misrepresentation. In light of *Lawrence*, this Court finds that it is inappropriate to limit the misrepresentation exception to commercial transactions in this Circuit.

Finally, Plaintiffs argue that this case is similar to *Mandel v. United States*, 793 F.2d 964 (8th Cir. 1986), where the court concluded that a claim based on a National Park Service Ranger's failure to warn a swimmer of swimming hazards was not based on a theory of misrepresentation and breach of a duty to use due care in communicating information. *Id*. at 967. Instead, the court determined, the claim was premised on "the failure of Park Service personnel to comply with the previously adopted safety policy" of warning users of the hazards in the river. *Id*. The Eighth Circuit has since explained that it reached that result in *Mandel* because the case concerned individual actions that did not conform with mandatory safety policies. *See Chantal v. United States*, 104 F.3d 207, 212 (8th Cir. 1997) (clarifying that the conduct found actionable in *Mandel* involved "the failure of an individual park ranger to comply with the safety policy previously adopted," rather than discretionary decisions made by the agency itself). The United States in *Mandel* was not shielded from liability either by the discretionary function or misrepresentation exceptions to the FTCA.

The claims pled here are distinguishable from those in *Mandel*. Plaintiffs have not alleged that the fraudulent concealment was a result of a failure to apply any previously adopted safety policy. Instead, Plaintiffs allege that Defendant intentionally concealed information relating to the safety of Upper Pines Campground. Plaintiffs' claim is exactly that they "acted in reliance on a false statement," *see Mandel*, 793 F.2d at 967, that the campground was a safe place. Moreover, even if the situation here were analogous to that in *Mandel*, Ninth Circuit precedent indicates that an intentional failure to communicate information is included within the definition of a misrepresentation. *Lawrence*, 340 F.3d at

---

[1] As discussed above, the element of reliance is alleged here.

958.

In sum, the third cause of action sounds in misrepresentation, which is barred by the misrepresentation exception to the FTCA's waiver of sovereign immunity.

**D.      Plaintiffs' Request for Discovery**

Plaintiffs request that they be permitted to conduct discovery relating to the prior failure of one stem of the Subject Tree before the Court rules on Defendant's motion to dismiss. Doc. 35 at 19-20. The Court "is vested with broad discretion to permit or deny discovery. *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). "Refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction'" *Id*. (quoting *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977)).

The Court addressed Plaintiffs' request in its previous order. Since the Court lacks jurisdiction over Plaintiffs' claims, Plaintiffs' request for discovery is DENIED.

**V. <u>CONCLUSION AND ORDER</u>**

For the reasons set forth above, all of Plaintiffs' claims are barred by exceptions to the FTCA's waiver of sovereign immunity. Therefore, this Court lacks jurisdiction over the operative complaint and Defendant's motion to dismiss is GRANTED. The Court finds that further leave to amend would be futile, and accordingly this dismissal is WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

Dated:   **November 7, 2017**            **/s/ Lawrence J. O'Neill**
                                                    UNITED STATES CHIEF DISTRICT JUDGE